IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

WILLIAM HENRY DEASE,        )
                            )
        Plaintiff,           )
                            )
v.                          )   Case No. CIV-14-673-F
                            )
JOHN WHETSEL; LT. BARNEY;   )
S. MAY; SGT. MARLAR;        )
CORPAL [sic] ORTIZ;         )
ROVER ALVEREZ,              )
                            )
        Defendants.         )

## REPORT AND RECOMMENDATION

Plaintiff, appearing pro se, filed an amended complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. Doc. 46. United States District Court Judge Stephen P. Friot referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Defendants Alverez,[1] Marler,[2] Ortiz, and Whetsel[3] filed the court-ordered Special Report and a motion to dismiss, Docs. 59, 60. The

---

[1] The docket reflects service on Rover Alverez was unsuccessful. Doc. 55. Regardless, Mr. Alverez is represented in this case, Doc. 58, and has joined the dispositive motion. Doc. 60.

[2] Plaintiff spelled this party's name "Marlar" but Sgt. Marler states that it is spelled "Marler." Doc. 60, at 12, n.1.

[3] Plaintiff has not successfully served either Defendant Lt. Barney or Defendant S. May. Docs. 54, 56. The undersigned does not address Plaintiff's claims against these individuals.

undersigned notified the parties that the court would treat Defendants' motion as a motion to dismiss and/or summary judgment and gave the parties an opportunity to present further materials if desired. Doc. 61. Defendants presented additional materials, Doc. 62; however, Plaintiff did not respond to the dispositive motion or the court's order.[4]

As fully set out below, the undersigned recommends that the court grant Defendants dismissal and/or summary judgment on Plaintiff's claims against Defendants Alverez, Marler, Ortiz and Whetsel.[5]

## I. Plaintiff's claims.

### A. Plaintiff's claims relating to his September 2013 arrest.

Plaintiff alleges Lt. Barney and S. May used excessive force during his September 2013 arrest,[6] delayed medical treatment, and confiscated $600.00 from his person. Doc. 46, at 3, 8-10. Lt. Barney and S. May then booked Plaintiff into the Oklahoma County Detention Center (OCDC) "without

---

[4] For the parties' pleadings, the undersigned's page citations refer to this Court's CM/ECF pagination.

[5] Based on this recommendation, the undersigned has declined to address some of Defendants' arguments for dismissal and/or summary judgment.

[6] Plaintiff believes he was arrested in late August 2013, Doc. 46, at 3, but Defendants present evidence that Plaintiff's arrest was actually in September 2013. Doc. 59, Ex. 13, at 2. This dispute is not material.

medical treatment." *Id.* at 10.  Liberally construing the amended complaint, the undersigned notes Plaintiff seeks to hold Defendant Oklahoma County Sheriff John Whetsel liable for Lt. Barney and S. May's conduct.  *Id.* at 1, 9-10.

### B. Plaintiff's claims relating to his confinement at OCDC.

Following his September 2013 arrest, Plaintiff was confined at OCDC until February 2014.  Doc. 59, Ex. 12, at 11.  Plaintiff was later re-arrested and re-confined at OCDC from May 2014 to March 2015.  *Id.* Ex. 8, at 2, 6. Plaintiff alleges that during his OCDC confinement, Defendant Whetsel unconstitutionally failed to train jail officials to properly respond to grievances.  Doc. 46, at 11-12.

Plaintiff also alleges officials denied him access to the courts.  First, he claims that an unidentified OCDC employee denied him access to the law library, and he blames Defendant Whetsel as that person's supervisor.  *Id.* at 12.  Second, Plaintiff claims that Defendants Marler, Alverez, and Whetsel conspired to interfere with his application to proceed in forma pauperis and that Defendant Whetsel ordered a jail official to confiscate money from his trust account to interfere with his ability to make his initial filing fee payment.  *Id.* at 12-15.

3

Finally, Plaintiff claims that Defendants Marler, Alverez, and Ortiz moved him from his second-floor cell to a fourth-floor cell in retaliation for his complaining about Lt. Barney and S. May's excessive force. *Id*. at 15-16. Plaintiff complains that he had to sleep on the fourth-floor cell's floor, "subjected to toilet floods and fecal matters." *Id*. at 16. Plaintiff explains that even after officials moved him back to a second-floor cell, he "remains sleeping on the floor despite Doctors re-request for bottom bunk accommodations for medical reasons." *Id*. at 17. Again, with liberal construction, the amended complaint appears to hold Defendant Whetsel accountable for all these alleged violations. *Id*. at 1, 16.

Plaintiff sues Defendants in their individual and official capacities, *id*. at 3, and seeks: (1) an unspecified preliminary injunction; (2) a declaration that "each Defendants [sic] herein acted in concert and of a conspiratorial manner"; (3) monetary relief; (4) an order providing him and "all detainee's [sic]" access to the law library now and "in the future"; and (5) appointment of counsel. *Id*. at 17-18.

## II. Standards of review.

Defendants' dispositive motion contains arguments for dismissal and for summary judgment. Two standards apply.

### A. Standard for dismissal.

Under Fed. R. Civ. P. 12(b)(6), Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In determining whether a claim is "plausible," the court must "draw on its judicial experience and common sense." *Id.* at 679. "Pleadings that do not allow for at least a 'reasonable inference' of the legally relevant facts are insufficient." *Burnett v. Mortg. Elec. Regist. Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013).

While engaging in this determination, the court must assume the truth of all well-pleaded factual allegations in the amended complaint and "construe them in the light most favorable to [Plaintiff]." *See Bryson v. Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990).

### B. Standard for summary judgment.

The court shall grant summary judgment "if [Defendants show] that there is no genuine dispute as to any material fact and [Defendants are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering Defendants' motion for summary judgment, the court views the facts and

inferences drawn from the record "in the light most favorable" to Plaintiff. *See Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006) (citation omitted). And, while the court "liberally" construes Plaintiff's pro se pleadings, he must adhere to "the same rules of procedure" binding on all litigants. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citation omitted). This strict adherence applies to Rule 56 motions. *See, e.g., Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir. 2010) ("[W]hile pro se litigants are entitled to a liberal reading of their filings, . . . they still must follow the established procedures governing Rule 56[] motions[.]").

Because Plaintiff signed his amended complaint under penalty of perjury, Doc. 46, at 18, the court may consider it an affidavit for purposes of summary judgment, but only if it asserts facts made on "personal knowledge" as would be admissible in evidence. *In re Grandote Country Club Co., Ltd.*, 252 F.3d 1146, 1153 (10th Cir. 2001) (agreeing with the plaintiff that "verification of a complaint converts it to an affidavit suitable for use in opposing a motion for summary judgment" but holding that "[a]lthough a verified complaint may have evidentiary value, this is only true 'if the facts asserted are within the pleader's personal knowledge.'" (citation, ellipsis, and brackets omitted)); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must

6

be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). To overcome summary judgment, Plaintiff's "affidavit" "must have the force needed to allow a jury to rely on it . . . ." 10A Charles Alan Wright, *et al.*, Federal Practice & Procedure § 2727 (3d ed. 2015). "The mere existence of a scintilla of evidence in support of [Plaintiff's] position will be insufficient; there must be evidence on which the jury could reasonably find for [Plaintiff]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (original internal brackets omitted). "[N]either frivolous assertions nor mere suspicions will suffice to justify a denial of summary judgment" and "the court may disregard an offer of evidence if it is too incredible to be believed." 10A Charles Alan Wright, *et al.*, Federal Practice & Procedure § 2727.

### III. Plaintiff's individual-capacity claims relating to his confinement at OCDC.

On the individual-capacity claims, the court should grant Defendants dismissal and/or summary judgment on Plaintiff's allegations relating to his confinement at OCDC.

#### A. The requirement for personal participation in individual-capacity claims.

Personal participation is "an essential" element in a § 1983 action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). And in an

individual-capacity suit, "§ 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). So, to hold a party personally liable as a supervisor, a plaintiff must establish an "'affirmative link' between the supervisor and the constitutional violation." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citation omitted). A party may establish this "affirmative link" through showing: "(1) personal involvement; (2) sufficient causal connection, and (3) culpable state of mind." *Id.* (citation omitted).

## B. Plaintiff's claim involving the grievance process.

Plaintiff alleges Defendant Whetsel established a grievance process at OCDC but failed to train jail personnel to properly respond to administrative grievances. Doc. 46, at 11-12. The undersigned finds Defendant Whetsel is entitled to dismissal with prejudice on this claim.

An inmate lacks any "independent constitutional right to state administrative grievance procedures." *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011). So, even if the court assumes that Defendant Whetsel set up an ineffective grievance process, Plaintiff has failed to state a claim for violating his constitutional rights. *See Von Hallcy v. Clements*, 519 F. App'x

8

521, 523 (10th Cir. 2013) (holding that inmate failed to state a valid claim for relief on his allegation that prison director failed to establish an effective "grievance reporting system" because he lacked an "independent constitutional right to . . . administrative grievance procedures"). Because no amendment could cure the deficiency in Plaintiff's claim, the court should dismiss this allegation with prejudice. *See Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190-91 (10th Cir. 2014) ("[E]ven though pro se parties generally should be given leave to amend, it is appropriate to dismiss without allowing amendment 'where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend.'" (citation and internal brackets omitted)).

### C. Plaintiff's claims involving access to the courts.

Plaintiff raises several claims involving access to the courts. Plaintiff alleges an unidentified OCDC employee denied him access to the law library, and he blames Defendant Whetsel as that person's supervisor. Doc. 46, at 12. Plaintiff also claims Defendants Marler, Alverez, and Whetsel conspired to interfere with his application to proceed in forma pauperis and that Defendant Whetsel ordered a jail official to confiscate money from his trust account to interfere with his ability to make his initial filing fee payment. *Id.*

at 12-15. Defendants seek dismissal on grounds that Plaintiff has shown no actual injury, Doc. 60, at 36-39, and the court should grant their motion.

To state a valid claim for relief based on denial of court access, a prisoner must plead an "actual injury." *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2006) (holding that to state a valid claim for denial of court access, plaintiff must show that the denial or delay "'prejudiced him in pursuing litigation'" (citation omitted)).

Plaintiff claims Defendants tried to interfere with his application to proceed in forma pauperis and his initial filing fee payment, but the court granted Plaintiff in forma pauperis status, Doc. 15, and received his initial filing fee payment, Doc. 19. So, even assuming that Plaintiff's allegations are true, he suffered no prejudice in pursuing this litigation. Similarly, Plaintiff has not demonstrated his inability to visit the law library has caused him any actual legal injury. Plaintiff's access to courts and related conspiracy claims fail to state a valid claim for relief. *See Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (holding that plaintiff could not state a valid claim that prison officials denied him access to the courts through lack of a law library and interference with legal documents because he did not "demonstrate actual injury"); *Meredith v. Bd. of Cnty. Comm'rs of Sheridan Cnty.*, 605 F.

App'x 753, 757 (10th Cir. 2015) ("[B]ecause no underlying constitutional violation had been shown, the [district] court rejected the [related conspiracy] claim."). The court should also dismiss these claims with prejudice. *See Knight*, 749 F.3d at 1190-91.

### D. Plaintiff's retaliation claim.

According to Plaintiff, Defendants Marler, Alverez, and Ortiz retaliated against him for complaining about Lt. Barney and S. May's conduct. Doc. 46, at 15-16. Specifically, Plaintiff alleges Defendant Marler ordered Defendants Alverez and Ortiz to transfer him from his second-floor cell to a fourth-floor cell, causing a classification change and the denial of a medically-ordered bottom bunk. *Id.* Plaintiff seeks to hold Defendant Whetsel liable as the supervisor. The undersigned finds these Defendants are entitled to summary judgment.

"It is well-settled that '[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts.'" *Gee,* 627 F.3d at 1189 (citation omitted). However, "an inmate is not inoculated from the normal conditions of confinement . . . merely because he has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Therefore, Plaintiff must show that "'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Id.*

11

(citation omitted); *see also Lewis v. Clark*, 577 F. App'x 786, 798 (10th Cir. 2014) (Because an inmate "'is not inoculated from the normal conditions of confinement,'" "a prisoner claiming retaliation 'must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place.'" (citation omitted)). Plaintiff must show personal participation in the retaliation. *See Bennett*, 545 F.2d at 1262-63.

Defendants present evidence that Defendant Marler did not order Defendants Alverez and Ortiz to move Plaintiff from the second floor to the fourth floor; instead, Cpl. Ashely Orr moved Plaintiff after misreading his booking charge. Doc. 59, Ex. 4; Ex. 8 at 18. Plaintiff complained, *id.*, Ex. 8, at 15-17, and after an investigation, officials returned him to the second floor three days later with no classification change. *Id.*, Exs. 4, 7, 8, at 19.

Plaintiff did not respond to Defendants' motion and can rely only on his "affidavit" (i.e., his verified amended complaint) to create a genuine material dispute. But Plaintiff's bald assertion – standing alone – that Defendants Marler, Alverez, and Ortiz were involved in the transfer is speculative. And, Plaintiff does not dispute the evidence showing that Cpl. Orr ordered the transfer based on a mistake. So, even construing all the evidence in a light most favorable to Plaintiff, the undersigned finds he cannot show either that Defendants Marler, Alverez, or Ortiz personally

participated in the temporary reassignment, or, that "but for" retaliation, Plaintiff would not have been moved. So, the court should grant Defendants Marler, Alverez, and Ortiz summary judgment on the retaliation claim. With this ruling, Defendant Whetsel is also be entitled to summary judgment. *See, e.g., Norman v. Randolph*, 597 F. App'x 988, 990-91 (10th Cir. 2015) ("And because Ms. Norman failed to produce evidence showing a constitutional violation, Sheriff Randolph cannot be held liable as a supervisor.").

**E. Plaintiff's conditions-of-confinement and medical claims.**

Plaintiff alleges that following his September 2013 arrest he was booked into OCDC "without medical treatment." Doc. 46, at 10. He also claims while he was temporarily housed on the fourth-floor, he was "subjected to toilet floods and fecal matters." *Id.* at 16. Finally, Plaintiff alleges he remained sleeping on the floor, and did not have access to his lower bunk, as medically-permitted, during this stay on the fourth floor or when he was returned to the second floor. *Id.* at 16-17.

For all of these claims, Plaintiff has identified no liable party or even alleged that any named Defendant was aware of the problems. The undersigned finds these allegations fail to state a valid claim for relief. *See Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (finding no error in the district court's dismissal of plaintiff's medical claims where the inmate

"failed to allege personal participation in the deprivation of medical care"); *Brewer v. Gilroy*, __ F. App'x __, No. 15-7027, 2015 WL 5106273, at *5, *8 (10th Cir. Sept. 1, 2015) (affirming the district court's dismissal of plaintiff's claim that prison officials placed him in a cell with feces and sewage because plaintiff's "conclusory" claim identified no responsible party); *see also Galloway v. Whetsel*, 124 F. App'x 617, 619 (10th Cir. 2005) (affirming dismissal of plaintiff's claim that his jail cell was covered in feces because he "did not allege in his complaint that Mr. Whetsel [or any other defendant] was aware" of the problem). For these claims, the court should dismiss without prejudice.

## IV. Plaintiff's individual-capacity claims relating to his September 2013 arrest.

As noted above, the three parties implicated in Plaintiff's claims relating to his September 2013 arrest are Lt. Barney, S. May, and OCDC Sheriff John Whetsel. Lt. Barney and S. May have not been served and Defendants do not address the claims against these two parties. Instead, Defendants challenge Plaintiff's claim that Defendant Whetsel is liable for Lt. Barney and S. May's alleged unconstitutional conduct. Doc. 60, at 19-21.

Specifically, Defendants present evidence that Lt. Barney and S. May were not and are not OCDC employees and have never operated under Defendant Whetsel's or OCDC's supervision or control. Doc. 59, Ex. 1

(affidavit from Tina Isch, OCDC Personnel Specialist Supervisor II, swearing that OCDC has no former or current employees named Lt. Barney or S. May); Doc. 62, Ex. 1 (OCDC booking sheet showing the arresting officer to be "[Oklahoma City Police Department] May"); Ex. 3 (Oklahoma City Police Department report written by Officer Brandi May describing Plaintiff's 2013 arrest and Lt. Barney's involvement).

Plaintiff did not respond to Defendants' evidence, so he has only his "affidavit" speculating that Lt. Barney and S. May were OCDC employees. But the undersigned finds that Plaintiff's speculation – even if verified –can not overcome summary judgment on this issue. And with Defendants' evidence that Lt. Barney and S. May were Oklahoma City Police Officers and not OCDC employees, no reasonable jury could find that Defendant Whetsel had an affirmative link to Lt. Barney and S. May's allegedly unconstitutional conduct. The undersigned therefore recommends the court grant summary judgment to Defendant Whetsel on Plaintiff's claims relating to his September 2013 arrest.

## V. Plaintiff's official-capacity claims relating both to his September 2013 arrest and OCDC confinement.

A suit against a public official in his official capacity is, in reality, a suit against the governmental entity. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official capacity suits . . . generally represent only another way of

pleading an action against an entity of which an officer is an agent." (citations omitted)); *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). So, a suit against Sheriff Whetsel or his deputies, in their official capacities, "'is the equivalent of a suit against the County.'" *Layton v. Bd. of Cnty. Comm'rs of Okla. Cnty.*, 512 F. App'x 861, 867 n.4 (10th Cir. 2013) (citation and internal brackets omitted). To hold Defendants responsible for any constitutional violation in their official capacities, Plaintiff must prove that Oklahoma County's "policy or custom" played a role "in violating federal law." *Kentucky*, 473 U.S. at 166.

Plaintiff has failed to state a valid claim, and/or has failed to demonstrate as a matter of law, that any Defendant violated his constitutional rights. So, Plaintiff cannot successfully demonstrate that an Oklahoma County policy or custom played a role in a federal law violation. *See Shue v. Laramie Cnty. Det. Ctr.*, 594 F. App'x 941, 943 (10th Cir. 2014) ("[A] necessary condition for holding a [county] liable under § 1983 is the establishment of a constitutional violation by its officers or agents"). The undersigned recommends the court dismiss Plaintiff's official-capacity claims. For the official-capacity claims relating to Plaintiff's conditions of confinement and medical concerns, dismissal should be without prejudice. For all the remaining claims, dismissal should be with prejudice.

## VI. Recommendation and notice of right to object.

The court should dismiss *with* prejudice Plaintiff's individual- and official-capacity claims alleging inadequate grievance procedures, denial of access to the courts, and conspiracy to deny access to the courts. The court should dismiss *without* prejudice Plaintiff's individual- and official-capacity claims involving his alleged denial of medical treatment at OCDC following his September 2013 arrest, temporary subjection to toilet flooding and fecal matter, and denial of access to a medically-assigned bunk. Finally, Defendants are entitled to summary judgment on Plaintiff's allegations of retaliation and Defendant Whetsel's involvement in Plaintiff's September 2013 arrest.

With these recommendations, the court should deny Plaintiff's requests for injunctive and declaratory relief and to appoint counsel.

The undersigned advises the parties of their right to file an objection to the report and recommendation with the Clerk of this Court by November 18, 2015, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make a timely objection to the report and recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation does not terminate the referral.

ENTERED this 29th day of October, 2015.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE